## In re Anonymous No. 65 D.B. 84

Disciplinary Board Docket No. 65 D.B. 84.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania,

POWELL, *Member,* May 15, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

### HISTORY OF PROCEEDINGS

Petitioner, [ ], was disbarred by Supreme Court order dated November 28, 1984. Petitioner was disbarred following his November 14, 1984, statement of resignation, which he tendered to the Pennsylvania Supreme Court in accordance with Rule 215, Pa.R.D.E. Petitioner submitted his request for resignation after the Office of Disciplinary Counsel alleged he had engaged in two separate instances of misconduct.

On May 18, 1990, petitioner filed a petition for reinstatement and reinstatement questionnaire.

The matter was referred to Hearing Committee [   ], which was [   ].

On January 24, 1991, a hearing was held on petitioner's request for readmission to the Pennsylvania bar.

On March 4, 1991, Hearing Committee [   ] filed its report and unanimously recommended that the petition for reinstatement be granted. No exceptions to the Hearing Committee report were filed.

The matter was adjudicated at the April 10, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Petitioner is a 50-year-old resident of [   ] County who was admitted to the Pennsylvania bar in 1965.

(2) Petitioner was disbarred on consent pursuant to Rule 215, Pa.R.D.E., in November 1984.

(3) Petitioner voluntarily resigned from the Pennsylvania bar following the filing of a petition for his discipline on August 6, 1984, and a separate, unrelated allegation of misconduct.

(4) In the first instance of misconduct, which occurred over ten years ago, petitioner represented [A], a minority shareholder being squeezed out of his corporation by the majority stockholders. Petitioner failed to properly protect [A's] minority shareholder rights, which resulted in [A's] sustaining damages.

(5) [A] then brought suit against petitioner and the law firm where he was employed at the time. Petitioner failed to inform his partners of the lawsuit, which led

to the entering of a default judgment against petitioner and his firm.

(6) After independent discovery of the default judgment, petitioner's former firm moved to have the default judgment opened, at which time [A] filed a complaint against petitioner alleging neglect.

(7) The malpractice suit was eventually settled by petitioner's insurance carrier.

(8) In the second instance of misconduct, petitioner represented [B] in his purchase of real estate from the [C's]. Petitioner failed to record the mortgage and conform the mortgage to the deed through the addition of Mrs. [B's] name.

(9) Because of petitioner's neglect, the mortgage failed to provide the [C's] with the security to which they were entitled, and an intervening judgment attached to the property.

(10) Petitioner paid the [C's] losses and expenses out of his own funds.

We also adopt the following facts found by the Hearing Committee and supported by the evidence:

(11) Since his resignation and subsequent disbarment in 1984, the petitioner has refrained from practicing law and has not held himself out to be a practicing attorney.

(12) Since his disbarment, the petitioner has supported himself and his family by working as an officer and an employee of [D] Inc., a doll manufacturer, and since January 1990 as an employee and officer of a doll clothes company.

(13) Petitioner's duties with [D] Inc. from 1984 to 1987 consisted primarily of marketing and co-financial control. From 1987 to 1990, the petitioner's

duties were limited to marketing aspects of the corporation.

(14) During the petitioner's tenure with the company, [D] Inc. went from a small company with approximately nine employees to a good size concern with over 100 employees.

(15) At all times during petitioner's employment by [D] Inc., the company was undercapitalized.

(16) As a result of this undercapitalization, from time to time the company was unable to pay its federal and state taxes. However, due to a recapitalization of the company, all such taxes were current when the petitioner ceased employment with [D] Inc. in 1990.

(17) Petitioner has kept current in the law by reading advance sheets, by consulting with his brother with whom he plans to practice, and by taking various courses attached to his petition.

(18) With respect to the conduct that led to petitioner's resignation, it appears that the petitioner understands his problems and will not be likely to neglect client matters in the future.

(19) Specifically, problems which led to petitioner's resignation resulted from the petitioner taking on too heavy a workload, sometimes in areas of the law where he did not have sufficient expertise.

(20) The petitioner's plans, if reinstated, are to limit his practice to business and corporate areas.

(21) The petitioner, if reinstated, will resume practice with his brother, [    ].

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude consideration of the instant petition for reinstatement.

(2) Petitioner has sustained his burden of proving, by clear and convincing evidence, that he possesses the moral qualifications, competency, and legal learning necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar, nor subversive of the interests of the public.

## DISCUSSION

The only question in the instant matter is whether petitioner's request for reinstatement to the Pennsylvania bar should be granted. Ascertaining whether petitioner should be restored to the practice of law in this Commonwealth necessitates a two-part analysis.

The Disciplinary Board must assess whether the conduct which resulted in disbarment was so blatantly offensive to the public and the bar that it preempts possible reinstatement at this time. The threshold issue in any reinstatement proceeding is whether sufficient time has elapsed since the misconduct occurred, during which petitioner has engaged in a qualitative period of rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The preliminary inquiry in any reinstatement case is whether the misconduct which led to the disbarment is so egregious as to render restoration of the attorney to the bar impossible. Because there are certain acts of misconduct so offensive to the integrity of the bar and contrary to public interest that no amount of time or rehabilitation can rectify, "a review of the underlying offense is required as an initial step in determining eligibility for reinstatement." *Office of Disciplinary Counsel v. [H],* No. 4 D.B. 76 at 4 (1986).

The issue in this case is whether petitioner's neglectful handling of a minority stockholder claim and a real estate transaction are so antithetical to the well-being of the public and the bar as to preclude consideration of his petition for reinstatement. While we are cognizant that petitioner's conduct in the aforementioned matters was unacceptable, we are confident that his actions were not so patently offensive as to eliminate his potential readmission to the bar.

Both the facts surrounding petitioner's disbarment and Pennsylvania case law support the conclusion that the conduct which led to petitioner's voluntary resignation from the bar in 1984 does not deter entertainment of his prayer for reinstatement.

In the [A] matter, petitioner acknowledged that his failure to properly protect his client's minority shareholder rights did in fact result in damages, which led to a costly malpractice suit. In the [B-C] case, petitioner's admitted failure to record a mortgage and conform it to the deed through the addition of the purchaser's wife's name caused the sellers to lose the security to which they were entitled, and resulted in an intervening judgment being attached to the property. Although petitioner's conduct in these two instances is certainly not laudable, it is not so heinous as to obviate his possible reinstatement. We note that in each instance the harmed parties were reimbursed for their damages. Furthermore, we are aware that the Office of Disciplinary Counsel contends that petitioner has satisfied the *Keller* threshold, thus making these proceedings timely.

The [E], [G] and [F] cases all support our conclusion that petitioner's misconduct was not so inherently offensive as to bar possible restoration of his license to practice law in Pennsylvania. The petitioner in [E]

was readmitted to the Pennsylvania bar in a case similar to the instant one, wherein he had voluntarily resigned after unsatisfactory handling of client affairs. *Office of Disciplinary Counsel v. [E]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989). [G] was reinstated after his disbarment for delivery of a bribe to a public official, offering of false testimony under oath after a grant of immunity, failure to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" of checks for a public official. *Office of Disciplinary Counsel v. [G]*, 26 D.B. 81, 7 D.&C.4th 260 (1990). [F] was reinstated after several convictions for making material untrue statements to the Office of Housing and Urban Development, fraudulent lot sales, and mail fraud. *In re [F]*, 49 D.&C.3d 298 (1988).

The next question before the Disciplinary Board is whether a quantitative period of time has elapsed since disbarment during which petitioner has engaged in qualitative rehabilitation. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [E]*, Nos. 4 and 35 D.B. 79, 5 D.&C.4th 557 (1989).

Since the time shortly preceding his 1984 disbarment, petitioner has participated in the development of [D] Inc., a collectible doll venture, for which he has acted as vice-president and handled various business responsibilities. During the course of his tenure at [D] Inc., which ended when the company was bought by a group of venture capitalists in 1990, petitioner participated in the design and marketing of an upscale doll which became very profitable. Following his departure from [D] Inc., petitioner entered into another venture which

manufactures doll clothing. Petitioner was also involved in the renovation and selling of personal investment real property. Petitioner has not ever had any problems with alcohol or substance abuse.

Petitioner has garnered valuable business skills during the period of his disbarment which will enhance his anticipated return to the practice of business law with his brother, who testified on his behalf before the Hearing Committee. Indeed, we note petitioner's vow to avoid participation in the types of practice which led to his neglect. The lack of any substantial personal problems underlying petitioner's disbarment and his satisfactory handling of his business affairs since his disbarment lead to the conclusion that a qualitative, rehabilitative period of time has elapsed since petitioner's disbarment, thereby enabling his restoration to the bar so long as he has complied with the statutory mandates required of a Pennsylvania attorney.

In order to be reinstated, petitioner must demonstrate, with clear and convincing evidence, that he is satisfied that he has met the following conditions outlined in Rule 218, Pa.R.D.E.: (1) that he has the requisite moral qualifications and learning in the law expected of a Pennsylvania attorney; and (2) that his resumption of the practice of law will not be subversive to the interests of the public nor compromising to the integrity of the bar. See Rule 218(c)(3)(i), Pa.R.D.E.

Pennsylvania case law illustrates that the petitioner may prove moral qualifications through the introduction of favorable character testimony by well-respected sources. *Office of Disciplinary Counsel v. [E]*, Nos.

4 and 35 D.B. 79, 5 D.&C.4th 557 (1989); *In re [F]*, 49 D.&C.3d 298 (1986).

Petitioner presented uncontroverted favorable character testimony at the hearing on the petition for reinstatement. We find that this testimony, coupled with the fact petitioner has no addiction or alcohol problems or underlying maladies, lead to the conclusion that he has the moral qualifications mandated by Rule 218.

Petitioner's participation in the Pennsylvania Bar Institute education program and his reading of advance sheets, as well as numerous analytical conversations with his attorney brother, prove that petitioner has the learning in the law required of a member of the Pennsylvania bar.

Based upon petitioner's compliance with the conditions outlined in Rule 218, Pa.R.D.E. and his satisfaction of the *Keller* requirement, we are convinced that petitioner is ready to be reinstated, and that his resumption of the practice of law will not have an adverse effect on the public or the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement of [petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Mr. Hill and Ms. Lieber did not participate in the adjudication.

## ORDER

And now, November 26, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated May 15, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.